The argument next in numbers 2271 and 22339, Franco v. Gunsalus, and please. Mr. Bergstein, whenever you are ready. Yes, good morning. May it please the court, Stephen Bergstein for the plaintiff, Mario Franco. Two primary issues for the court on this appeal. First, the jury had a factual and legal basis to find liability in Franco's behavior on his excessive force, false arrest, and malicious prosecution claims. And secondly, Franco was entitled to a punitive damages charge on each of those claims because the jury may find that each of these civil rights violations constituted reckless indifference to plaintiff's constitutional rights. Let me start with excessive force. Plaintiff and five witnesses testified that without provocation, Officer Gunsalus punched plaintiff in the face or the head, choked him, and once plaintiff fell to the ground and his head hit the pavement, Gunsalus punched him multiple times on his right side before lifting plaintiff from the ground by his handcuffs, causing more pain. And special interrogatories demonstrate that plaintiff exerted no pressure on Gunsalus, and that Gunsalus punched plaintiff more than once, which means that Gunsalus wasn't simply trying to restore… Well, the special interrogatory said there was no pressure, but even Franco said he backed away or shifted away, right? There's a nuance to that. Gunsalus grabs plaintiff from behind. Plaintiff doesn't realize that he's being confronted by a police officer. When they're face-to-face, plaintiff realizes that Gunsalus is an officer. He didn't resist… He does. So you're saying that once they are face-to-face, he doesn't realize he's an officer. You're not saying the jury verdict precludes that decision. Say it again? He does realize he's an officer. Eventually he's face-to-face, but that took a minute because he was attacked from behind. He testified, quote, I didn't really push off him. I was like stepping back, like shaking away. That's 115, 116. Quote, I didn't do anything, and he just punched me in the face. So, you know, it's not like he pushed the officer. He reacted to somebody… The previous decision which I wrote said there were perhaps very unlikely facts, but a statement of facts which could give rise to recovery for all of these three. And you then had trial, and the jury came out your way. So, I'm there. I mean, you know, I wasn't sure the facts would be there, but the jury came out that way, which meant that they read any number of facts about where he was in relation to the Cadillac, to whether he heard, to what was meant by saying, are you deaf, motherfucker, all sorts of other things of that sort that were there, and that's what the jury found. The question for me is, does that justify punitive damages? Is that a thing that you properly preserve when you objected at the beginning for the lack of a statement of punitive damages? I think probably, yes, under current things. And what do we make of the fact that the jury gave $5,000 against one and nominal damages against the other, but whether they were saying there wasn't anything to compensate because there wasn't any serious injury, but weren't allowed to think about punitive damages, or they were saying, hey, come on, this is what is right. Let me try to answer them in sequence, and if I forget one of the questions. He did object to the ruling. When the judge said, I don't think there's enough, Planoff sought this charge in writing in his proposed request to charge at page 615, 617. He wanted punitives on all federal claims. And all federal claims, including false arrest? Yes, yes. It was the general punitive damages charge under section 1983. And the judge gave his explanation why you're not getting a charge, and Planoff objected at page 560. That's enough to preserve the objection. You don't have to preserve the objection after the charge. So that's the first question you asked. Second question, I forget the second question. Or were they saying there were no injuries, and therefore we can't give more than this? Apart from reading the two leads of what the jury was thinking, what about the district court's determination that there just wasn't evidence to justify the punitive damages instruction? So the district court has said that it requires legal motive, and they said it's likely to require a defendant to act with knowledge of false injuries. So in order to justify punitive damages, there has to be evidence that the officers subjectively knew that there was no probable cause that they were doing it anyway, or that the force wasn't justified or whatever. So the jury determined based on objective circumstances that the force was excessive. They said that the officers couldn't—it would be unreasonable to assume that they had heard the order to disperse and so on. But in the context of the officers dispersing everybody, it's a very brief interaction. So why did the district court write that there just isn't evidence that they subjectively knew they were violating the person's rights, even if I'm going to respect the jury determination that based on objective factors there was a rights violation? Because he appeared to attack plaintiff in a fit of rage and punched him repeatedly, including after the plaintiff hit the ground and was either face down or on his side, he kept punching the plaintiff. Two witnesses testified who were completely neutral and didn't know anybody in this case. That's not a necessary conclusion from the jury verdict, right? So the jury decides that it's excessive force because he wasn't entitled to assume that Falco had heard the order to disperse and so on. And so any kind of physical submission would be excessive force because there wasn't any reason to be acting against him. It doesn't mean that he has to be doing it in a fit of rage. The jury didn't determine that. The district court said it doesn't look like a fit of rage to me, right, because it's a brief interaction. It's in the context of dispersing a crowd and so on. It depends on how you look at the evidence. Looking at the evidence most favorably to Franco, this was a gratuitous attack on Franco for no good reason. Well, in evaluating the jury verdicts, we're going to look at the evidence in the light most favorable to Falco. But when we're evaluating whether the district court was right that there wasn't a preponderance of the evidence to show evil motive, do we do this at the same standard? The district court was wrong. Is that a factual determination? I guess I have this question. Is that a factual determination with the district court? The district court says there's no evidence of evil motive that would justify punitive damages. I think that's illegal. Is that a factual determination? I think that's a legal conclusion. That's what the evidence shows. But the evidence looking at it most favorably to Franco, again, was that this was excessive force. And, you know, why punch him when he's on the ground repeatedly? There's no good reason to do that. You're saying that essentially the same evidence that would give rise to a finding objectively of no qualified immunity could have led the jury, wouldn't necessarily have led the jury, but could have led the jury to say subjectively these were doing this. Exactly. I think that's not right, right? Like in McArdle, we say that just because a person's Fourth Amendment rights were violated doesn't mean that there's going to be punitive damages. To accept that proposition would essentially expose defendants who would avoid punitive damages for any conduct not protected by qualified immunity and would thereby make the availability of punitive damages equal to the availability of compensatory damages. And we said that's not appropriate. So we've said there needs to be something more, right, to justify the punitive damages than we require to justify compensatory damages. Well, we have malice. We have the foul language that Gonzales directed toward Plaintiff in a rage. And then we have the neighbors saying when Plaintiff hit the ground, Gonzales began hitting him in rapid succession. How is that not reckless indifference to Plaintiff's civil rights? I guess the jury could say, okay— Well, maybe it was excessive, but it was a brief interaction to subdue him, and the officer stopped when he was compliant. And so even if I'm going to allow the jury to determine that it was excessive force, I don't think it shows evil motive. It stopped being a brief interaction when Plaintiff hit the ground, but Gonzales continued to attack him. You're saying that perhaps a verdict of punitive damages could have been set back by the jury acting as 13th juror, but that it can't say that there was no evidence on which the jury could find subjectively— Exactly. My question now is, what do we do now? Can the district court do the equivalent of a remititure and say, okay, we send it back, but we send it back for everything? Or must the district court, if we find that it erred on not allowing punitive damages, send it back only for a determination of punitive damages? That's a very unusual thing that we do, and I just don't know what the appropriate way— I mean, I'm assuming for the moment that you're right and that the district court should have let it go to the jury. What is the appropriate thing in a case like this? A trial on punitive damages, and we cite in our brief two cases from this circuit that tell us what happens. I've seen cases get remanded for damages only, and in that— Well, there's been a finding of liability, right? Right, so the jury knows there's liability. There hasn't been a finding here that there's punitive damages liability, right? That's a separate finding the jury has to make, whether there's evil— Correct, so you're going to— So I guess my question is, how is that going to work? So aren't these determinations intertwined? So the juror has to look at the same evidence again. The juror says, well, I think there was probable cause, but the judge has told me there wasn't, so I have to suspend my disbelief about it. How much disbelief should I suspend? Well, now I've determined whether, even though there wasn't probable cause, did he subjectively know there wasn't probable cause? So if there's an evil motive, or was it something lesser than that? And he's going to say, well, he's going to ask the judge, so how much am I bound by? The judge can't tell him. The judge tells the jury, we have already found liability. That's a given you have to accept. Whatever you think of the case, it doesn't matter. But liability was based on certain objective facts, and in order to find punitive damages, you have to find not just that objectively this was not justified, but you have to find that subjectively they intended something. Is that what you think the charge would be? Yes. You would read them a punitive damages charge. So if a juror thinks, well, actually, I'm looking at this evidence, and I don't agree with the original jury. I think that there were obvious objective factors. There wasn't a rights violation. Then that jury is still bound by determining that there was, and has to say, well, OK, I'm putting myself in the shoes of the first jury to say that there was this degree of liability, and now I make a separate finding about whether it was also subjectively. I mean, isn't this all just bound up together? It's considering the same evidence, making the same judgments about the degree of reasonableness of the officer's conduct and the officer's state of mind when he's doing it. You're just retreading the same evidence. I don't think it's retreading if we tell—the jury's going to hear the same evidence again. We know this from Waitley v. Bitar from 1980 that explains this, that you're going to have to revisit the evidence again. The defendant can tell the jury, I didn't do it. It wasn't that bad. I didn't mean it. But in Waitley v. Bitar, in the finding of liability, the court decides that the damages aren't sufficient to compensate. And so on remand, you tell the jury, OK, we've determined liability. Now, you set aside the extent of the injury. But here, you're actually making a liability determination again. So you're saying, well, the first jury has determined liability to this extent up until objective circumstances, and I have to determine whether it goes even further to subjective knowledge on the part of the officers. It's all the same liability inquiry, right? It's just a matter of degree. The first jury's got here, and the question is whether they should have kept going. Why is that intertwined with the liability? It's not intertwined. It sounds like if the jury believes what Your Honor is suggesting a juror might believe, then you're probably not going to get punitive damages. But did Franco have— I have a hypothetical juror that I've posited. I understand. But now think about how it's going to work, right? So a juror is there to hear the evidence again, but is told at the outset, you can't question whether there's liability. We're telling you this was a violation of his constitutional rights, and you have to accept that. And now you have to decide whether they knew it was or wasn't. I mean, isn't that going to push the jurors to say, okay, well, even if I don't think this evidence seems that serious, I'm being instructed that it is, that it's a constitutional rights violation. Then they're probably not going to award punitives on that hypothetical. On the other hand, we know from the cases that you— Well, why don't you just tell me why these are different and distinct inquiries? It seems to me it's all determining the nature of the act by the officer and whether there's liability. It seems to me intertwined. I don't think it's that complicated. The judge tells the jury, ladies and gentlemen, there's a determination that these officers are liable on the following basis. And now you determine whether there's malice or reckless disregard for the plaintiff's civil rights. You're going to revisit a lot of the evidence. And that malice and these are, for this purpose, subjective. Correct. For this purpose, we have to know not just that when you say something without it being the truth, you're next, that that isn't just objectively so, but that they have to be saying something subjectively malicious. Correct. And the jury is going to be told what happened. But, Wheatley, this court said we should not take a felon's liability verdict away from him merely to correct an inadequate award of damages. Defendants may repeat their denials if they did anything wrong, but the jury must be told to accept as fact that some force was used and that defendants' liability— Again, that there was a finding of liability, and on remand there was not going to be any new finding of liability. On remand it was just, okay, what's the extent of the injury? Isn't it different here? There's an initial imposition of liability on compensatory damages and an award of damages for compensatory damages. Now we have a new trial saying, well, maybe the liability should have been at a higher level and there should be more damages. You're sort of tacking on more liabilities, which was not happening at Wheatley. Well, the defendants can testify again, and you can't upset the first verdict. That's a Seventh Amendment problem. It's highly unusual to remand a case for all purposes, including liability, when there's a problem or an issue with damages. You agree that the standard is if they are, in fact, intertwined, right? We would remand for a new trial. So there are circumstances in which we would do exactly that. The question is whether this is one of those circumstances or not. It's been known to happen, but I've researched this in other cases. It's rare that you have a remand on liability and damages because of something that went wrong with damages. I mean, I don't think it's that hard to have the procedure that I'm suggesting. And we have held that punitive damages can exist even when a jury is given only nominal damages. Correct. And finally, this court in Cameron, as you know, said you can get a punitive damages charge on false arrest because false arrest assumes lack of probable cause, which we infer malice, and that would therefore support a finding of malicious punitive damages. Does it necessarily indicate malice? It can indicate malice. But can it be that an officer lacks probable cause but has a subjective belief that he has probable cause? So there's an objective circumstance. The jury can say there wasn't probable cause, but it's not enough to determine that the officer didn't believe subjectively that he had probable cause. Well, then you might not. The lack of probable cause doesn't necessarily mean he acted with. But it can. It can. It can, but there has to be some other piece of evidence. Well, we do have other evidence. He beat the hell out of a guy, and he called him an M.S. And you can say that a reasonable officer would have believed that there was no probable cause, and therefore there is no qualified immunity, and therefore there are compensatory damages and so on. But the question of whether this officer believed that he was doing a false arrest, if there was no, is a subjective question, and that's what is necessary for the giving of punitive damages. So that would be the issue, and again, that is what the jury would have to be charged. Can you find it as to this officer? And at this point, this officer comes in and says, what I believe, and it's not a question of what other people. This report says that there's no evidence that this officer subjectively believes that he was violating constitutional rights, and so therefore I'm not going to let you have the charge. So what is the strongest evidence that goes to the officer's state of mind that you think justifies punitive damages? He subjected Planoff to repeated attacks for no justification, including when Planoff was on the ground. That's number one. Number two, Gonzales never gave an order to disperse because most of Planoff's witnesses never heard it, and Gonzales said if I gave one, everyone would have heard it because I'm loud enough to hear it in the next neighborhood, and yet most of Planoff's witnesses said there was no order to disperse. The strongest evidence you have is that what he said and what other witnesses said were contrary, and so a jury could find that he was lying, and if they found that he was lying, then they could find subjectively that he had malice. Now, you know, I'm not saying that's what happened, and when I wrote the first opinion, I was very skeptical of what would happen when it got to the jury, but the jury came out essentially saying that, and that's where we are now. Is it possible for a jury to determine, to decide that it's just totally unconnected to any kind of dispersal? I mean, there's no dispute that he's dispersing a crowd, right? The jury said something similar to have assumed down the street that Falco would have heard his dispersal order, whatever he was saying to the other partygoers, but is there really any question that the officer was in fact engaged in the dispersal of the crowd? Initially he was, but one of the witnesses said that by the time Franco showed up, the crowd had largely dispersed. It was the tail end of the dispersal, but if you credit that witness, which maybe we do and maybe we don't, but even if you credit that witness, it means it's the tail end of the dispersal, but he still engaged in the dispersal of the crowd, right? Although the district court says, well, I don't think he's acting with evil intent. Maybe he went overboard, but I just don't think punitive damages are required because of the context in which this happened, and I'm still not sure why that's erroneous. We don't know whether he really dispersed the crowd because nobody seemed to hear it when Gonzales said, if I did it, you would have heard it. So assuming that he never gave an order to disperse, and then he attacked… But come on, I mean, there's no dispute that there was a crowd that in fact dispersed. Sure, but he had no reason to believe that Planoff was ignoring his direct order to disperse. Yes, right. So the jury said it would be unreasonable for him to assume that Franco had heard the dispersal order. That doesn't mean that the whole context of him being engaged in a dispersal is not relevant to his subjective state of mind. But if he never gave the order, then why would Franco know that there was an order to disperse and he had to get out of there? That's the problem. That's what the first decision was all about. It's enough for the plaintiff to say, I didn't hear it, and that's evidence that it was never given. But we have other witnesses who say they didn't hear it also. What I'm saying is… All right, so my question was what shows the evil intent? And you're saying it's because a jury can conclude that there never was a dispersal order, and he was just gratuitously attacking somebody in the street. Sure, that he gratuitously beat up a guy. He had no business attacking. That's malice. I don't think it's a controversial proposition to suggest that in most excessive force claims, or in many excessive force claims, you might be entitled to punitive damages. I mean, the standard for excessive force is high enough for the plaintiff to satisfy, but you're proving that the officer was not only derelict in his duties, he was malicious in his duties. Otherwise, there wouldn't be an excessive force. That's the argument. Okay, thank you very much, Mr. Bergstein. We'll hear from you again on rebuttal, but let's turn to the attorneys. First, Mr. Powers. Thank you, Your Honor. My name is John Powers, and I'm going to be handling the cross-appeal. My colleague, Ms. D'Agostino, will be handling the appeal. Okay. Which seems to be what the majority of your questions were focused on. But I think that the two are related, and I think the cross-appeal, for purposes of our argument today, I'd like to focus on the issue of qualified immunity and start with the false arrest. And I think that our discussion of the issue of qualified immunity, which this Court is considering de novo, needs to rest on the actual factual record. Okay? And it's our position that qualified immunity was appropriate on the false arrest charge for five reasons. One, that the force was admittedly brief, and the plaintiff admits this in his testimony. The challenged force occurred over a period of seconds. Second, the force caused no injury to the plaintiff. Third, the strikes that were used were used in response to active resistance. Plaintiff admitted to active resistance. Third, the officer was using a technique, two techniques actually, a takedown and strikes that he missed. Counsel, there were a set of facts, unlikely but a set of facts, including what witnesses said, what the plaintiff said, and so on, which, if believed by a jury, would be that no objective person, reasonable police, would think that they needed to do what was done. Not very likely, but there were those facts, and the jury so found. I don't agree, Your Honor. The jury has never presented the question of what every reasonable officer would believe. It's actually a question for the jury, right? So the question of qualified immunity is for the courts. The jury gets to decide on the facts, right? And the jury is deciding that he committed excessive force and decides facts like Mr. Franklin did not exert pressure on the officer, but it seems like it's undisputed that he pulled away or tried to get him off his shirt or whatever that comment is. And so it might be that the jury is entitled to decide that that doesn't justify the force, but then it's a qualified immunity question as to whether when you're faced with somebody who's trying to back away or get the officer off his shirt, whether it's clearly established that it would be excessive force to do that, to do that person to handcuff them, right? Precisely so, and in response to your question, Your Honor, the jury's entitled to find that the force is unreasonable, but that's not a qualified immunity question. If there is a finding by a court that there is a question of fact as to whether an objective policeman would, under the circumstances, do that, you are entitled to a jury charge on that question. And you can object if the jury charge of that question is not accurate, but if you do not object to the jury charge that was given and then the jury comes out that way, you can't object further. So it may be that you should have said to the court, okay, but charge the jury more specifically that that was not done, and if that's not done, and we do it all the time for the, you know, when it's the other side complaining, so I think you're stuck with that. Now, the question of punitive damages, since that raises a different issue, is one on which we can talk, but anyway, that's sort of where I'm at. Well, this character sits on the cross-appeal, so why don't you explain why you think that the jury instructions don't preclude your arguments here on qualified immunity? If there is qualified immunity, the court must decide that. The court can decide it is a fact question whether a reasonable person would, and that's what we decided. You know, if we had decided the other way, we would have said there is qualified immunity, we're arguing qualified immunity in the first case, and yet we held there were facts on which a jury could find an objective, reasonable, police would know not to do what he did. You know, I just don't see that that isn't settled. That's my problem. Well, this court, Judge, and the Supreme Court in Saussure v. Katz have said that the issue of liability under 1983 and the issue of qualified immunity are two entirely separate questions. Of course they're separate questions. And so the question in qualified immunity, which was not presented to the jury, is would no reasonable— Well, it's not presented to the jury, but the question is those facts are. I think what Judge Kelley is saying is, so we can't tell from the jury verdict whether the jury thought that no dispersal order was given or, for whatever reason, they decided it would be unreasonable to accept Mr. Franco to have heard the dispersal order, right? Right. And you might think, well, if no dispersal order was given, then they would not be qualified. I mean, it's obvious you can't arrest somebody who never gave a dispersal order. But if he might have believed that there was—that he did give a dispersal order and just, you know, thought that Franco had heard it but, in fact, Franco did not hear it, then maybe there was qualified immunity. Now, we can't tell what the jury thought from the record. And I guess what Judge Calabresi is saying is maybe that's your fault for not asking for a more specific verdict from the jury. Well, the special interrogatories were given. The one special interrogatory that relates to this issue asked whether the jury found whether the plaintiff ignored the command. And that relates to, obviously, whether he heard it or not, not whether it was given. But the record, which the judge is obligated to make the qualified immunity determination on, was undisputed. And there was a disinterested witness, plaintiff's friend, Patrick Johnson, who testified unequivocally. We have the evidence that Patrick Johnson says he heard, you know, some type of absence, right? And so your point is, well, he's even further along than Franco is, so probably he heard it. But the jury could have said that they never heard anything, right? Of course, but that's not establishing that the order wasn't given. But the jury could have found that your client lied. You know, it seems unlikely, but the jury could have found that your client lied out of these facts. And if that is so, there would not be qualified immunity. Whether they found that sufficiently to say that there would be 200 doubts is another issue. But the jury could have found here, given what the witnesses said, that. And again, you might have asked for a more nuanced jury charge. But the jury charge was what it was, and that's not before us. Explain that. The district court doesn't look at the record and decide they don't have qualified immunity based on what's clearly established and what's not, right? That's a legal determination of the court. So we can decide whether it was right about that or not, right? The court has to look at the record. And you can't always tell from the jury's determination in the verdict form, or even in this case, in the special interrogatory, what was decided. So you have to look at the record as a whole, and that's what the Supreme Court precedent. And you have some arguments that actually just isn't sufficient evidence, right? So the jury says they're not obstructing traffic, and so this is a probable cause for arresting him for disorderly conduct or obstructing traffic. But you said there's a video that shows that the car is illegally parked, and it's in the middle of the streets. Now, maybe the jury is still right that he's not literally obstructing traffic, but your position, I think, would be, well, it's got to be that it's not clearly established that officers couldn't arrest somebody for obstructing traffic if they're on the street side of an illegally parked car. And that's a judgment call, and that's the stuff of qualified immunity. But that was all before the court in the previous case. I disagree, Judge. That was all before the court. Well, you can disagree. I was there. Judge, Patrick Johnson's testimony was not in front of the court during the interlocutory appeal. Rachel Carey's testimony, also a disinterested witness at J8466. That's right. And the court said before, on the basis of this, where the car was, the video, and so on, the question of qualified immunity as well as the question of liability, generally probable cause, is a fact question. And then more evidence comes in, but the more evidence does not make, as a matter of law, change any of that, and then it goes to the jury. Well, our argument is, Judge, that this case is no different than this court's decision in Carvalho at this point, but it was different when you issued your interlocutory opinion, because the only evidence on whether the orders had been given, other than the evidence from the officers themselves, was that the plaintiff didn't hear. And you concluded that that created an inference that the orders, in fact, were not given. Well, the records changed. Two additional witnesses came forward and testified there were dispersal orders. And people, others, testified that they didn't hear and that there wasn't. Well, I'm just curious, in the context of the probable cause to arrest, so the interlocutory appeal that Judge Calabrese is talking about focused on whether a dispersal order was given or not. But whether a dispersal order was given or not doesn't seem relevant to whether somebody who's out on a legally parked car is obstructing traffic, is it? Well, there's actually a probable cause on at least four charges. Right, but I'm going to focus on this one, because it seems like there's speculation, and also it doesn't seem relevant to the factual question that the interlocutory appeal was about whether there was a dispersal order, because I assume your position would be, well, there's probable cause to arrest somebody for obstructing traffic if they're in a no-parking zone on the street side of the car, regardless of whether a dispersal order was given or not. Correct. And, Your Honor, once the video evidence is shown, and the video, it's 447A, and you'll see it in the video, but it's also captured, the frame is captured in Exhibit D35. Isn't the case, can I just ask you, and I did look at the video, the fact of a vehicle being illegally parked does not necessarily mean that it's obstructing traffic or that it's in the street. I mean, doesn't the video show that the car is, in fact, up against the curb, it's not in the street, and so I think you sort of want to change the argument a little bit too well that the car is not necessarily obstructing the street, but it's illegally parked because it's beyond the no-parking sign or what have you, but it's about obstruction is what you argued below, I think, wasn't it? Well, and this is where context is important in the totality of the circumstances which we're required to consider. This was a key intersection. It was illegally parked at the corner of Victoria Place as it funneled on to Allen Street. And this is the direction that all the party goers, and the witnesses described them as being funneled down the end of the street. So the illegally parked car is illegally parked at the corner, which is in the turning radius of the cars that are leaving. The reason why there's no parking sign is because it's in between the stop sign and further down the curb, and that's exactly where cars go when they're making turns in an intersection. And so that's necessarily where regular traffic is going to go, and so anybody who's in that zone is obstructing traffic. Or at the very least, a reasonable officer would understand that they wouldn't have advance notice that they couldn't arrest somebody who's in that zone because that's where traffic flows. And that's what the case law bears out. Well, they can arrest the person, not the driver. Doesn't that go, though, to the person who's in the car, the person that is parked? Perhaps suggest probable cause to arrest the person driving or in the car, but someone standing next to an illegally parked car? If the illegally parked car is in the turning radius, illegally parked, it's in the turning radius of a car trying to turn on Allen Street, and there is a pedestrian to the left of it in the roadway, they, too, are obstructing traffic. But the question was where this person was, the car was parked illegally, there's no question. The question was where this person was, whether the police saw where he was, and whether they went after him without giving warning. And I'm not saying that I believe that that's what happened, but whether a jury could find that that is what went on, given what the witnesses said and what the police said they did and what other people said that was not true, whether they could find that this fellow was then arrested and attacked in a way that no reasonable officer would have thought was justified. And the fact that the car was clearly in the wrong place is suggestive of another possibility, but it doesn't exclude that possibility. And that's, again, you know, that's the kind of thing we were dealing with. The presence of probable causes to any charge eliminates the false arrest claim. And so that's why we're talking about the different charges, Your Honor. And our position is there's also probable cause for resisting based on the plaintiff's admission that he was pulling away. Not only did he take two steps away from Officer Gonzales, he admitted to pulling his arms away from Officer Gonzales. Again, that's an act of resistance. Right, but is it resistance if there's no reason to think that there's justification for an arrest or seizure? I mean, is that resisting? Or is that unlawful resistance? It can't be unlawful resistance unless the act that the officer is attempting to take is lawful, correct? Well, we can't look at things in hindsight. We have to look at it from the officer's perspective on the ground. But they are related, and that's why we're talking about probable cause for each of the different charges. But once there's probable cause, he is allowed to take the person into custody. And if he takes the person into custody, and they take a step away from him, or they pull their arms away from him, the case law bears out that that provides probable cause for resisting charge. Right, but it's dependent on that initial, there has to have, you know, if there's probable cause for the arrest, or if there's not, then those responsive reactions are not resisting unlawful charges. Would a reasonable officer believe that they had a right to take that individual into custody based on the totality of the circumstances? Yes, that's your question. And it's not based on whether we figure out later on down the road that there wasn't probable cause, or a court determines there wasn't probable cause, it's based on what is going on at the time. And the question is, is there a set of facts before the jury on which the jury could hold that no reasonable officer would have thought that they had a right to do what they did? And I would suggest to you that while the facts that you suggest are quite likely, and that I as a juror might have believed them, there is, if you go through all the facts that were before the jury, a set of facts on the basis of which a jury could come out the way it did. But you're talking about disagreeing with the jury verdicts, right? You're saying that, because you think we're focusing on qualified immunities, you're saying the district court should have accepted the jury verdict and said, okay, fine, so there was excessive force or a lack of probable cause, but under the circumstances, a reasonable officer would not have understood to be in violation of the established rights. And that doesn't disturb the jury's fact finding. We're appealing both issues. Because I'm focusing on qualified immunity because it's a broader, it's a more permissive standard. And so, to your point, Judge, the fact that the jury may have been entitled to reach the result it reached based on the factual record presented to them does not rule out the issue of qualified immunity. If there was a set of facts which a jury could find on the basis of which the court could say, no reason more, that's the question that is always before the court, an interlocutory appeal in qualified immunity cases. Because if there is no set of facts, then we grant qualified immunity immediately an interlocutory appeal. If there instead is a possible set of facts on the basis of which no reasonable officer could find, then qualified immunity is denied at that level, and then it goes back down, and then the facts are found. And I may have misinterpreted your question, but, Your Honor, the jury wasn't presented with the issue of qualified immunity, and I disagree. But then, that's a separate question of whether the jury in its charge was sufficiently focused on that. And you may be right that the district court should have been, that had you asked for a different charge, they would have given it. But that's, again, not before us. Well, you say they judge a motion for judgment as a matter of law, right? Yes. But you're asking the district court to decide that no reasonable jury could look at this record and conclude it was a violation of a clearly established preference. Right? You're asking the district court to make that determination. Relative to qualified immunity. Qualified immunity, yes. And the district court could have done that, right? District court could say, I'm looking at this record, I don't think a reasonable jury could conclude that there's a set of facts in which it was just no reasonable officer could have believed that he was responding to resistance, or that he lacked probable cause to arrest her and shift in traffic, and so on. Maybe we might disagree with you on that, and we do think that there was such a set of facts, but it's certainly a legitimate argument to say that no reasonable jury could have reached a conclusion, that there's just no way a reasonable officer could have understood he was doing something wrong. And I'm not suggesting that the jury should have been charged with that, because I believe this court's counsel is that the jury is not instructed on qualified immunity. What I'm suggesting is that the record does not support the qualified immunity statute, even accepting all inferences in the non-moving party's favor, but considering the testimony of disinterested witnesses, and also the videotape evidence which can't be disputed. Okay, Mr. Towers, I think we have that argument. Let's turn to Ms. D'Agostino from the main appeal. Thank you, Your Honor. As you know, my argument is going to be limited to plaintiff's appeal, where a plaintiff is requesting that the matter be remanded down for a punitive damages only trial. I submit to you that that request is not appropriate for three reasons, the first of which is that his request is unpreserved, and I understand in your initial questioning that you're skeptical of that argument. During the charge conference, when Judge Scullin indicated that he wasn't going to give the punitive damage instruction, plaintiff's counsel only indicated that he objected to the instruction not being given. That's a general objection. Under Ranson v. Doe, 723F3D325, this court said that when you don't explain why an instruction is required, that's not sufficient to preserve the issue for appeal and it's subject to plain error review. There's also been additional cases since Rule 51 was amended that say that the appropriate, you also have to renew that request after the jury is actually charged. United States v. Grote, 961. I thought that our recent cases said that you did not have to renew. Am I wrong? I mean, the law certainly was that you had to renew, but I thought that after the change in law that our recent cases said the opposite, and so the previous cases no longer are what it's about. I'd like both sides to say more about that, because that seems to me an important issue. There's certainly been a couple of cases after the 2003 amendment or Rule 51 that have said you're still required to renew that objection after the jury is charged, unless that objection is futile. Unless that, I'm sorry? Unless the objection is futile. You're just making the objection. It's a mere formality. There's no reasonable likelihood the court is going to change its mind on that decision. The site that I just gave, United States v. Grote, 961 F3D380, it's a criminal case, but the court noted that the preservation rules in the criminal context are similar to what it is in the civil context, and the court specifically noted that after the instruction is given to the jury, that's the clearest opportunity to fix the mistake requiring retrial. And frankly, had that objection been renewed, or had it been specifically articulated in the first place, the court wouldn't be in the position that it is now considering what a possible retrial could look like. What's the reason, though, for thinking that you said that it's not required to be renewed if there's no reason to think that it would have made a difference? What's your reason for suggesting that here, you know, he'd ask for the punitive damages, it's been denied, the jury's charged, ask for it again. What's the circumstance that makes it not, in fact, futile here? Well, the timeline for what happened is after the charge was given, Plaintiff's counsel indicated he was very satisfied with it. The court, to his fondness, said that it was inclined not to give the punitive damages instruction, and Plaintiff's counsel simply said, I object to you not giving it. So the questions that this court was asking of my adversary were, what's the factual record that would support a punitive damages charge? That was what Plaintiff's counsel should have done below. After the court indicated it wasn't inclined to give it, that was Plaintiff's counsel's opportunity to say, well, this is the factual record to get to the punitive damages charge. Well, did the district court just say, I'm not inclined to give it, or did the district court say, I'm not about to give it on these facts? Because even if the jury came out that way, I would rule that there were no punitive damages. Let's be straight. It's different in terms of futility if a court says, I'm not inclined to do something. It's something else if a court says, I'm not going to do it, because even if you won on it, I'd reverse you. I understand what you're saying, Your Honor. But at that point, Plaintiff's counsel hadn't actually presented his position to the court other than saying, generally. No, no. The district court says, I don't think there's a factual predicate for it, and so I'm not going to give it. And in fact, even if the jury awarded punitive damages, I'd find that I'd give a judgment as a matter of law, because I don't think any reasonable jury would return that verdict. So he does say that. But you're saying that the Plaintiff should have then said, well, here is the predicate we think is the predicate for it, and give the district court the opportunity to explain why that wasn't sufficient. Yes. Correct, Your Honor. But they didn't do that at the time? You're saying that they've waived the objection? That it's unpreserved and it's subject to plain error review versus de novo review. Okay. So the second reason I submit that the request is inappropriate and the court was correct to deny the punitive damage instruction is because there was no factual predicate to give a punitive damage instruction. And that was what the court was discussing earlier, that there was no evidence in the record that any of the officers, and I should say it seems to me that Plaintiff is just arguing that a punitive damages instruction is appropriate for one of the defendants, not both of the defendants. And also adds to two of the charges, not three of the charges. So false arrest and, I'm sorry, malicious prostitution. He said for all of them. I mean, when he was arguing, he said for all of them. We'll ask him again, but he did say for all of them, for all of the charges. The actual position advanced below before the trial court was as to Defendant Gonzales alone and as to malicious prosecution and excessive force. Those were the only factual arguments that were made before Judge Scullin. So there's nothing in the record to reflect that Defendant Gonzales subjectively knew. There's nothing in the record to show that Defendant Gonzales was motivated by evil motive or callous indifference. Despite how Plaintiff's counsel is describing the use of force, there's no dispute that the force was brief. It was de-escalated as soon as he was in custody. Defendant Gonzales complied with his training and that Plaintiff was not injured. And then finally, the other reason that this request is not appropriate is because limiting the childhood punitive damage is not fair. What about the argument that, well, the jury said that there was no probable cause and you can infer actual malice from the lack of probable cause? Are you talking about with respect to false arrest or to malicious prosecution? Either one. I think that collapses. If the jury found that there was malice, that necessarily federalizes every single 1983 claim where malice is an element of that. So for malicious prosecution and false arrest. It doesn't federalize it, but it makes it punitive damages. Punitive damages is always available. You said that there has to be something different. Correct. There has to be a different level of malice.  Well, that may be. But is that a court question or a jury question? That is, if there is malice, is the degree of malice, if there is enough evidence of malice and it's objective, is that then a court question or a jury question? I believe it's a court question, Your Honor. You think there's a court question if there's malice? That the court can say there's malice, but not enough to give punitive damages? Can you cite me a single case that does that? I thought you were referring to actually giving the punitive damage instruction in the first instance, which is what happened here with Judge Sullivan. He looked at the record that had been induced by the party. No, I'm just saying what you are now arguing, the second thing, was there enough evidence? And the presiding judge asked if there was evidence of malice. Isn't that enough? And then you're saying, no, there are degrees of malice. But I don't think you can cite me a case on degrees of malice. I have another question that is... I think I can. So the case is McConnell, right? That says, to accept the proposition that a black man with a violation of a civil rights gives rise to a punitive damage award, would essentially expose the defendant to an order of punitive damages for any conduct not predicted by qualified immunity, and would thereby make the availability of punitive damages equal to the availability of compensatory damages. So he said, just because compensatory damages are available, it doesn't mean that punitive damages are necessarily associated with some kind of extra piece of evidence. You need more. You don't need violence. So it's obviously a fact question as to whether there was malice. But if the judge determined that there just is no predicate for the extra something that would show subjective awareness of violating somebody's rights, then it doesn't get to the jury, right? And that's what the district court decides here. Correct, Your Honor. And there doesn't seem to be a way that this could be remanded down to just hold a trial on punitive damages only. And so why is that? So we had a bunch of questions about that, as you saw. So why couldn't it be that a new jury could be instructed, okay, if we determine that there is a violation that just provides compensatory damages, then we need to decide whether there's a subjective awareness that the officer was violating rights, and so then decide whether there should be any sense of a punitive damages award. So what my adversary indicated when he came up here is that it's the same evidence. The objective evidence is the same as the subjective evidence. So the issues are necessarily intertwined. You can't separate the two so that this is a clean issue that can go back down where you can only consider one issue and not the other. Well, isn't the objective evidence different from subjective evidence? I mean, it really is. Subjective evidence, somebody comes in and says, hey, I didn't know. I'm sorry, I didn't know. Now, then the question of whether there's evidence that the person lied comes in, and that's one of the problems with your argument that there is some evidence. I don't know whether it's believable, particularly, but that the officers lied. But there is a difference between subjective and objective evidence. It doesn't seem that you can separate the two based on this record, though. They seem to be intertwined, and it's something that, if it is remanded for the court to consider punitive damages, it would have to be an entire trial. Just calling a jury back and telling a jury, they've already been found liable for violating their federal constitutional rights. Now you just have to determine whether their punitive damages are appropriate. That in and of itself is prejudicial. It infringes on defendant's right to fair trial. Why is it prejudicial? Because the jury is going to be pushed to fine punitive damages? You think it's going to be unfair? What's the reason why it's prejudicial? It's certainly unfair, but just the optics of bringing a jury back and having the jury be told, you don't have to consider liability. They're already liable. They already infringed on their constitutional rights. You only have to determine whether they're evil. The circumstance of the jury being empaneled and told, we already know these people are guilty, but now we're asking whether they're still guilty. We've had this whole new proceeding, and as you come to consider that question, is this going to be prejudicial to you? Correct, yeah. And you could, I assume, be able to tell that jury that the prior jury just gave $5,000 in damages. That's part of the fact. And, you know, if we're talking practice rather than theory, that second jury will notice that fact. Correct, yeah. Which way do you think that would cut? Would the second jury say, oh, they only got $5,000, so the whole point of this proceeding is to award a lot more money? And that's why we have a second proceeding, because the court seems to think the first one wasn't adequate. Or do you think that they would, you would just, as Judge Calabresi suggested, say, oh, well, the first jury felt it was only $5,000, therefore we shouldn't give very much money at all? No. Compensatory damages are always uncertain, if you give that little. I don't know. Anyway. And this goes back to the fact that it is an unusual request. When you're seeing cases remanded for punitive damages, it's usually to calculate the amount, so the record is very different. You're not looking at the underlying conduct. No, where the likelihood has already been determined. Correct, yeah. Correct, Your Honor. Thank you. Okay, thank you very much, Ms. D'Agostino. We'll turn back to Mr. Bergstein, Honorable. And I'd like to hear, first, whether you are asking for punitive damages on all three, and whether you're asking for punitive damages only against Officer Gonzalez or also against Officer Kelly, because it was said that you were asking only at Gonzalez and not for the false arrest. So I'd like to just have you be clear. All three. Excessive force, false arrest, malicious prosecution. Kelly was found liable on, I think, one claim, a false arrest. So, you know, if he's aware that there's no legal basis for arrest. You're getting a motion for a new trial before the district courts say there are two counts where the punitive damage isn't justified, and you identify the two, right? Correct. But you don't even have to make a motion for a new trial on an issue like this. So I don't know if that constitutes a waiver of the request for punitive damages on all three claims. The issue of whether, how do you, do you object post-charge? Jock versus DiMarzio. Could you tell me again about Officer Kelly? Are you saying that despite the fact that there was a nominal damages and only one, you are asking for punitive damages against him as well? Correct. Are you saying, okay. I just want to know as a matter of fact. I'm just interested. On the issue of objecting post-charge, this court held in Jock versus DiMarzio, 386 F. 3rd, footnote 7. If the court issues a definitive ruling and further objection would be futile. Judge Scullin said, even if I awarded a charge on punitives and you get money on punitives, I'm taking it away from you. He made his position clear. There's no reason to debate the issue further. He gave a definitive ruling. What about the argument that the opposing counsel said, which is that you should say what you think the factual basis was, because he never had the opportunity to address your argument that there was a factual basis. He just asserted there wasn't. And you said, oh, well, I object. Well, he had already put his request for punitives in writing and the judge was aware of why he wanted punitive damages. I don't know if you have to get that detailed when the case has reached this point with the summary judgment motion. There's an appeal. You have a trial. Judge Scullin knew why trial counsel wanted punitive damages. I don't know if you need to get into further detail on something like this to preserve your objection. The McCardle is a search and seizure case. It's not an excessive force case. I don't know if this court has addressed whether you're entitled, when you're entitled to punitive damages in an excessive force case, but I would say again that— But they did not adopt the principle that whatever is required for compensatory damages has to be something more for punitive damages. It can't automatically be that whatever you can accomplish for compensatory damages would automatically allow for punitive damages. We have said there has to be some extra— That may be true, but excessive force cases are a little different from other 1983, because excessive force you're really saying that you went above and beyond what was necessary to subdue somebody. And we have evidence here, and I don't want to be repetitive. Guskey said the officer struck him in quick succession when he was face down on the ground. He wasn't resisting. He was just being hit. How is that objective? Would I want an officer like that working on my local police force? And Carey said the same thing. Face down on the street, arms behind his back, and Guskey and Gonzales is pounding him, beating him up. Whatever we might say about the first couple of punches, once Franco was on the ground face down, how is that not excessive? A jury can say that's malice. I guess a jury can say it's not malice, but I'm willing to bet that a jury says there's malice here. Some of the other issues, that it was a brief show of force, I don't think that's enough to avoid liability on excessive force. A couple of very strong punches. Gonzales was bench pressing 400 pounds. I know that's in the record. He was a huge guy. Franco was a lot smaller. If you can take somebody down with a couple of punches, I don't think that gets you off the hook, the liability. No injury to plaintiff. Plaintiff said he was in significant pain from being punched five to seven times. His earlobe was ripped. His earring came out. These are all issues for the jury. We had some back and forth on who exactly heard the dispersal order. We had three plaintiffs, three witnesses, who definitively said there was no order. Elijah Johnson, Aaron Guskey, and plaintiff witnesses Carrie and Patrick sort of equivocated, but Judge Scullin was able to reconcile their testimony. But even if they definitively said, I heard a dispersal order, the jury can just believe them. And that's what trials are for. You believe this witness, you don't believe that witness. That's why trials are so risky. You're both pointing to different evidence in the record that could allow for one inference or another inference. It seems like Judge Scullin said, OK, a jury could believe that the officer couldn't assume that Franco heard the dispersal order. But why couldn't he decide under the circumstances? I just don't think there's a factual predicate for the idea that he subjectively knew there wasn't a dispersal order and therefore went after the guy because it looks like it was in the context of a dispersal. And so I just don't think that there's a factual predicate for the evil intent. If you're making a motion for a new trial to reconsider what the punitive damages was awarded, the district court is making a determination as to whether any reasonable jury could make a decision. Well, they couldn't. What did the jury determine? Question four, special interrogatories. Gonzales had no justifiable belief that Plaintiff had heard the instructions. That's not simply asking did Plaintiff hear it or not. That's Gonzales had no justifiable belief. In other words, the jury is saying Gonzales didn't give an order. Otherwise, he would have a justifiable belief. Well, it could also mean that he wasn't entitled. He didn't have a justifiable belief that he heard the order, meaning like he was going down the street. He shouldn't have assumed that he had heard the order. There's evidence on that. Gonzales said, the way I use my electronic bullhorn, you can hear it on the next street over. It's that loud. It's as loud as the silence. So if he gave an order, everyone would have heard it, including people who were around the corner. He didn't give the order. The jury's rationally found it. Even now, the jury didn't necessarily decide that. The jury is very consistent with the idea that he just couldn't assume he had heard the order. The evidence is consistent with the finding that no order was given, especially based on special interrogatory court. These aren't bad special interrogatories, by the way, on many of the issues. That's a good one, because it does tell you what he subjectively believed. And the jury said he didn't have a good faith subjective belief. Tell me what that question was, what that interrogatory was, and what the answer to it was. Did defendants prove by preponderance of the evidence that defendants Gonzales had a justifiable belief that Planoff had heard the instructions via the intercom to disperse? And the answer was? The answer was no. Gonzales didn't have a justifiable belief that Planoff had heard via dispersal order. So the jury is saying there was no order, not only based on Planoff's testimony, but some non-party witnesses who said they didn't hear it and it didn't happen. This is why we have trials. This is why trials are so risky. Finally, the illegally parked car. Planoff is leaning into the window. The car is parked close to the curb. Planoff wasn't driving the car. He's not obstructing traffic the way maybe the motorist should have been giving a ticket. Well, if the motorist is obstructing traffic and he's on the street side of the car standing in the road, doesn't he necessarily also obstructing traffic? Not if we accept the evidence in the light most favorable to Planoff, which was that he was leaning into the car with his head in the window. He's not interfering with the movement of any car if he's leaning into the car with his head in the window, especially since one of the witnesses said that most of the party goers were pretty much gone by then. So there wasn't much traffic for Planoff to. But if you're assuming that the car was obstructing traffic because in the zone between the stop sign and the parking sign where cars turn, isn't anything in that zone obstructing traffic or poses a risk of obstructing traffic? But would you charge somebody on the street with that who's not driving? Better. Would any legal officer know that you couldn't charge such a person with obstructing traffic? Well, the jury was essentially asked, because defendants argued that he was obstructing traffic. The jury said that he wasn't. That's why the jury said there was no probable cause. If the jury thought that Franco was standing in the street or he was The jury said that there's no probable cause. But the jury wasn't asking if there was an arguable probable cause because that's the legal determination for the court to decide whether a reasonable officer could arguably believe that such a person could be arrested for obstructing traffic, right? But we can draw the inference that the jury found that he was not obstructing traffic if he was pressed against the car In any event, the fact that it was allowed to be a factual question, which is the predicate for saying that you don't get qualified immunity before, was something that we had already dealt with. We know where the car was. We know where the guy was. That's just... First, Frank, your opinion. Was the illegally parked car mentioned in the interlocutory appeal that we decided in this case? There's only one way to find out. I thought most of the discussion in the interlocutory appeal was the disperse... The disperse order. Right. I don't know if the other issues came up. But there was a factual basis for the jury to find that the plaintiff was not obstructing traffic. We can look at the opinion. Okay. So, in summary, we asked this court to affirm on liability. We asked this court to remand for a separate trial on punitive damages. Thank you very much, Mr. Bernstein. The case is submitted. Is your argument meted? Is it submitted or is it five minutes? No, no, no. This case is submitted. Is that what the argument is?